Case number 17-3148. Gloria Panarello, appellate, v. David Long, Bernhardt, Secretary, United States Department of the Interior. Ms. Bertrand for the appellate, Mr. Field for the appellate. Good morning, Ms. Bertrand. Welcome to Washington. Thank you, ma'am. Thank you. This case is about a campaign of retaliation against an employee who successfully brought an EEO lawsuit. It spans five years. It's insidious retaliation and it's serious retaliation. The agency makes a lot of its process in explaining all of the acts it took against Ms. Panarello to include the non-selection for promotions, taking away of awards she'd been named for, refusing to send her to command assignments and to additional training. And they focus a good deal on what they assert are objective factors. But really, the one problem the agency has throughout its decision making is the subjective nature of these factors. Particularly when it came to the testing center, only 50% of the weight was given to the standardized testing that they were using. The other half was subjective. The rating officials knew who they were grading and they have offered nothing in the record to explain how the subjective portion of these decisions was balanced. Ms. Bernhard, you emphasize in your brief, is it the KSA? Is that the subjective portion? I believe so, yes. Is there any, did you request that in discovery, any record of how the KSA was evaluated? I didn't see that. I don't believe it was turned over in discovery. It was discussed in the depositions of the witnesses. I saw that, but in terms of what it actually said, we don't know, do we? No. You didn't put that in the record, did you? No, I didn't and the government didn't either. It's your burden of proof. On the second prong of McDonnell-Douglas, it's the government's, respectfully, Your Honor, I believe it's the government's burden to show that what they did was... Well, under McDonnell-Douglas, as our court has interpreted it under Brady, you come forward with a prima facie case, they put forward their nondiscriminatory reasons, and then it's your burden to raise a jury issue of discrimination. And so they put forward what they say are legitimate nondiscriminatory bases for the various decisions that you challenge. And then the question is, it's your burden to show in the end the reasons were protectual and the real reason was discrimination. And it would seem to me that a major part of your case is that that subjective evaluation was somehow tainted by discrimination. You would have sought that, and if they didn't provide it, you would have moved to compel. But I gather that's not the case. Your Honor, it is not. The information surrounding the subjective portion is not in the record. That is correct. And the government's representations regarding that testing system also is limited, even as to their prove-up. I don't believe that they showed in any way what went into the subjective portion. They didn't show what questions were asked, how candidates were scored, and particularly how Ms. Panarello scored in the subjective portion versus the other candidates. That also goes to the subjective nature of the suspension discipline that is discussed, in that it's quite subjective. They come back and say, well, we had all these reasons to do it, but what they cannot say is why this discipline decision is so different from the treatment of other employees who have been involved in far more serious matters. That record is in the trial court docket at docket number 19-4. It's an exhibit that includes Ms. Panarello's listing of all of the employees that she knows have been involved in more serious or comparable matters that were not proposed. And then we have O'Toole testifying that this is the only employee O'Toole has ever recommended for demotion, despite all these other things that happen in a law enforcement agency. It's the only one. Ms. Bertrand, what's your best argument that you exhausted your claim about the January suspension? Because it doesn't seem to be part of the lengthy narrative that's in Ms. Panarello's complaint. The best argument is that she was talking to the EEO investigator about that suspension right when it happens. She meets with the agency counselor or talks to the agency counselor on January 22, 2010. At that time, it is discussed that she's been proposed for demotion. I'm just watching my time here. And the agency, within days, says we're going to suspend you. We're not going to allow you to stay that pending mediation, even though she grieved it. And then, if the purpose of exhaustion rules is to allow the agency an opportunity to investigate and resolve employee claims, we know the agency investigated it. And we know that, starting from her report... How do we know that? The agency has, in its report, discussions of the discipline, and goes on to state in the report that one of the remedies Ms. Panarello was seeking was the reversal of that suspension. So, while the agency stated in its letter, we're only going to accept these two non-selection claims, it went on to talk with supervisors to find out more about what happened in that discipline and know that Ms. Panarello's, one of her listed remedies was reverse the suspension. It was unfair. And it came after EEO process had started. Ms. Panarello was not required to start a whole new process when this additional retaliation occurs after the agency has been on notice. But she could have amended the formal complaint that she filed right after the informal process. The agency did not offer her the opportunity to amend. She did repeatedly state in response to the agency's questions, they asked for several follow-up statements from her. She talks about the disparate treatment that she received in that suspension and asked that it be reversed. So the agency knew, the agency had the opportunity to do whatever it wanted to do with that in terms of... Does she ask for that in her complaint, in her formal complaint? In the formal complaint, I just want to make sure we're talking about the same thing. I believe she does ask for a reversal of the suspension in that, ma'am. Yes. But does she mention the specific facts about the claim? I just don't want to misspeak, so I'm being careful, Your Honor. I believe that throughout the process, she does. I don't want to state anything that I absolutely am not sure of. I can't remember the exact language in that initial complaint. But I know she tells the investigator from the outset, I was proposed for this demotion. That is for certain, because that's related to them taking away her law enforcement powers. And that is from the outset of even the informal process. There's no dispute she was proposed for demotion, and there's no dispute that it was converted into a two-week suspension. And then the question is whether the reason for that was retaliation or discrimination, or, on the other hand, an appropriate reaction to the top person in charge having done what was alleged to have happened at the Jefferson Memorial. So the disputes are not about whether it occurred. The disputes are about the reasoning behind. And your best evidence for retaliation being the reason in that case is what? A, the timing of it coming days after the initiation, and also the history. And Stover making the statement to one of her employees that was also involved. But the timing is days after she files her complaint, the proposed discipline is reduced. We'll give you some time for that. Okay. The proposed discipline is actually reduced in severity. It is reduced in its severity, correct. Significantly from a demotion to a two-week suspension. However, I agree with you. So the retaliation, I thought the gravamen of the complaint was retaliation going back from the EEO activity in the 1990s.  And so the question I have is how, what's your best evidence that the reason that Ms. Penarello was treated harshly in discipline with respect to the Jefferson Memorial event was retaliation for what had happened a decade earlier. What's the best evidence on that? Two prongs. The first is Stover says to one of the other officers involved in that incident, when the officer says, Ms. Penarello really was not involved in this centrally. We're all sorry. Please don't get Ms. Penarello in trouble. Stover says to him, very tellingly, you're not the target. So Ms. Penarello was the target from the outset. We also have here the agency ignoring its own rules in pursuing the discipline and in executing the discipline. It takes them 18 months to issue this when it should only take 12 months. They don't use the internal affairs process, which they were supposed to use, and that's discussed also, I believe, in docket number 19-4. They went around everything. And when you see that type of pattern of you have a supervisor saying what his intention is, and then you have a pattern of breaking its own rules to affect discipline, that is particularly at this stage of the litigation, taking the facts and the inferences in a light most favorable to Ms. Penarello, evidence that this was a retaliatory decision. The last piece of evidence that shows it was retaliatory, Your Honor, is that they refused to stay it and, again, refused to follow their own process. When she said, I would like to grieve this, it was not subject to an MSPB appeal because it was two weeks or less. I'd like to grieve this, set it for mediation. Please stay. And they said no. They had no reason to not stay it other than to punish. My red light is on. May I please? Yes, we'll hear from you briefly. Okay. Thank you. Good morning, Mr. Field. Good morning, Your Honors. May it please the Court, Brian Field on behalf of the appellee. I'd like to begin briefly on this question of the KSAs that the Court was asking about a few minutes earlier. As the Court noted, those are missing from or those are not in the record. They were not requested by Ms. Penarello during discovery. And, importantly, they were also not asked about in any of the depositions. There are discussions of the KSAs in the depositions, but the focus of those questions is really just on Ms. Penarello's questions about whether or not the KSAs were blind. Did the reviewers know who they were reviewing? That's really the entirety of the questions that were asked, or the focus of the questions that were asked about the KSAs. What we do know from the record, we do, in fact, contrary to the suggestion this morning, we do have the questions that were asked in the KSAs. Those are in the vacancy announcement at JA 89 to 90. We similarly have Ms. Penarello's answers to those KSAs in her application at JA 71 through 80. We also have the fact that we know that the KSAs and the assessment center scores are each weighted at 50%. We know her assessment center score that was in the lower quarter of all applicants, and we know that she ultimately scored at 24 out of 25. From that, the record is clear that Ms. Penarello scored more poorly than others on the KSAs as she did on the assessment center. On the suspension question, Mr. Field, why isn't the reference to the suspension in the requested remedies form enough to put the agency on notice that she's complaining about that? I mean, it's a little bit odd where the complaint clearly and squarely objects to the proposed motion, and then when the agency converts the discipline, it's the discipline for the exact same event. So she's saying, wait, I shouldn't have been disciplined with a proposed motion, and then she persists in her claim when the discipline has been changed. But she's objecting to the rationale and the fact of discipline where others weren't. So it seems quite formalistic, or one might say it's quite formalistic, to fault her on exhaustion grounds for that. A few responses, Your Honor. I want to respond first to something that you said right in the middle of that question, which was the suggestion that the formal EEO complaint put the proposed motion squarely at issue. The disparate discipline section, the last or second-to-last page of that six-page narrative, discusses only the October 14 suspension of law enforcement authority, not the actual demotion. And I do think that, and I take Your Honor's question and this court's case law about not being overly formalistic or focusing too greatly on technicalities, but at the same time, an agency needs to be presented with sufficient information, this court explained in Crawford, sufficient information to put the agency on notice of the claim. And our argument on this point is Ms. Panarello directed the agency to the attachment, and in that attachment did not raise either the demotion or the suspension. And this discussion about whether or not a new process needed to be started, as we explain in our papers, I think is secondary to the real question, which I think Judge Wilkins raised, which is she could have at least mentioned it or included it in her formal EEO complaint or asked or endeavored to amend her EEO complaint to include that argument. She didn't do that. Mr. Fieldberg, didn't she say this in the remedies section of her complaint? She asked for reversal of the suspension with back pay. Yes, Your Honor. Why isn't that enough? I mean, it's not in the narrative, but it is here on the complaint form. It is on the complaint form. We think that it is important to draw some distinction between the allegations and the factual explanation of the allegations that are included in that attachment and the reference in the remedies section. And we would suggest that that reference in the remedies section should be treated similarly to the comments that this Court has found insufficient in Marshall and insufficient in Crawford. For instance, in Marshall, a reference was made, actually two references were made, to an employer attempting to, you know, trying to terminate me. And the Court... You said that this is secondary, you know, whether a whole new process needs to be started, the real question is whether this discipline was at issue. And in some sense, the exhaustion question seems to me secondary to the question whether there is evidence in the record of the retaliation of which the plaintiff complains. And I know that this was litigated and decided in the district court principally on the non-exhaustion ground, but is there evidence? It seems like all of the adverse actions that are complained of stem from the same theory about retaliation. And the government argues that there isn't evidence and prevailed on the non-promotions and the non-assignments to command responsibilities for want of evidence of retaliation. Doesn't that same conclusion apply to the Jefferson Memorial discipline? Yes, Your Honor, it does. And to be sure, the district court decided on exhaustion grounds, but we briefed below, and the briefing in this court has also addressed the causal connection or the lack of a causal connection and also the lack of any evidence to suggest retaliatory motive in the Jefferson Memorial discipline, also in the non-selections. And as we were talking about with Plaintiff's Counsel, Ms. Panarello's argument in the briefing has really been focused on this 1993 to 2001 time frame. And I think as we explain in our papers, there is ample case law to suggest that that type of lack of temporal proximity really undercuts any inference of retaliation. We would suggest that that is reinforced by the fact that Lieutenant Stover was not even around at the time that the discipline was enacted and in fact had retired more than a year before the proposal to demote was even issued, let alone the ultimate suspension. So we would agree wholeheartedly, Your Honor, that this case could be decided and that the district court's decision could be affirmed on the basis that there were legitimate non-discriminatory and non-retaliatory reasons for the suspension. I'm happy to go through some of those reasons in more detail if Your Honor would like. I think the question for us would be, is the district court's decision on the non-promotions and non-assignment to command responsibilities, does that include any treatment of this question about the way the Jefferson Memorial event was handled? And I thought that it was dealt with there, so that there is some basis in the district court's treatment. I believe that the district court certainly talked about the significant disconnect in the theory of the case, in Ms. Panarello's theory of the case. And we would contend that that is certainly equally applicable over on the Jefferson Memorial discipline. My recollection is that the district court did not expressly tie the two together, and my apologies if I'm overlooking a statement from the district court on that ground. Both parties briefed it extensively below, and it's discussed in the briefing as well before this court. If there's anything further, we would request that the court confirm the district court's decision. You can have two minutes. The government focused just now in their argument, and they've done this in the briefs too, about the temporal relationship. And the case law that they're citing regarding temporal relationship to retaliation is misplaced. Ms. Panarello has not, at least up to the point where the discipline is issued after she files the new EEO matter, she's not argued temporal proximity. That is used, and the case law cited by the government pertains to when an employee claims retaliation, and her only basis is temporal proximity. So, for example, she comes to the EEO or to the court and says, I filed a sexual harassment claim on July 1st. On July 15th, I received a layoff notice. I don't have direct proof that this was in retaliation for my EEO activity, but it sure seems convenient that it happened in time. Ms. Panarello has not argued that. She wouldn't be able to. So, having a longer temporal... So, I think this will allow you to continue on the point you're trying to make, but just to focus you, the district judge, on page 36 of his opinion, which is at 382 of our joint appendix, in the process of talking about the lack of evidence of discrimination for the employment decision, says she failed to identify evidence from which a reasonable jury could find that the two-week suspension was imposed in retaliation for Panarello's participation in the 1998 litigation and the preceding EEO investigation. So, he's read the record. We look at it de novo. Where should we look in this record to point to the best evidence that that is wrong, in a de novo review, that we should so hold? The best evidence is the fact that this is particularly compared to what the discipline is for. O'Toole says, I never have even recommended anyone for demotion before. I understand they downgrade that to a suspension. We have the timing immediately after she contacts the EEO counselor. That doesn't intensify it. So, retaliation for contacting the EEO officer would be if they intensified it. We're not just going to demote you. We're going to fire you because you contacted the EEO. But that's actually the inverse of what happens. So, I'm not following the inference that you're drawing there. I think there's also, Judge, and it is relevant in looking at intent and common scheme and plan, we can look at the entire history of how Ms. Panarello has been treated. And that, I understand it's more amorphous, but I think that the most telling thing is the disparate treatment of Ms. Panarello with that discipline. And, yes, thank you very much.
judges: Pillard, Wilkins, Rao